James W. MENEFIELD,
Petitioner–Appellant,

v.

Robert G. BORG, Warden, et al.,
Respondent–Appellee.

No. 87–6651.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 31, 1988.

Decided Aug. 2, 1989.

James W. Menefield, Techachapi, Cal., in pro per,

Donald F. Roeschke, Deputy Atty. Gen., Los Angeles, Cal., for respondent-appellee.

Before SCHROEDER, REINHARDT and LEAVY, Circuit Judges.

REINHARDT, Circuit Judge:

I.

Appellant James Menefield, presently serving a twenty-nine year, 10 month sentence in California state prison, appeals the denial of his petition for habeas corpus. Menefield argues that the state trial court violated the Sixth Amendment when it refused his request for assistance of counsel in the preparation of a motion for a new trial.

In 1984, Menefield was arrested and brought to trial for burglary, attempted murder, assault with a deadly weapon, mayhem, and armed robbery. At pretrial proceedings, he was successively represented by two attorneys, and dismissed each in turn. After failing to achieve a working relationship with appointed counsel, Menefield asserted his right to self-representation.[1] Appellant represented himself dur-

---

1. Although the record before us does not include the court's inquiry into the voluntariness of appellant's waiver of the right to counsel, it does include the trial court's recollection of earlier hearings.

THE COURT: Mr. Menefield, I suspect Judge Miller talked about the issue of you representing yourself. You have probably been over that a lot.
THE DEFENDANT: Yes, he did.

THE COURT: You're convinced you want to do that?
THE DEFENDANT: Yes, I am.
THE COURT: I am not going to hassle you about it. I asked Judge Miller the simple question, is this guy some nut that's trying to turn a courtroom into a circus or is it a guy that wants to defend himself? And he said you are legitimately interested in doing your best to try the case. And, you know, that's cool.

ing extensive pretrial proceedings and then during a protracted trial. After his conviction on all counts, Menefield asked the court to appoint counsel to assist him in the preparation of a motion for a new trial. His request concentrated upon the intricacies of the California statute governing new trials. "I've studied it, but I just can't grasp it. I see what they're saying, but I just can't get deep off into it, like the other studies I did." The trial court denied the motion, citing two factors. First, the judge feared that the proceedings would be delayed while counsel familiarized himself with the transcript and the issues in the case. Second, although California grants a statutory right to petition the trial court for a new trial, the court concluded that the statute confers no substantive rights that could not later be raised on appeal.

"To tell the truth, if I appointed counsel at this point, we would have to get the entire transcript done, he would have to read every word of it to make the motion. Since its denial is going to result in the appeal, it seems to me the most appropriate thing is to wait for that time, or to say it differently, even though you waived your rights to counsel under the *Faretta* case that you are very familiar with, if I could see any significant impact that appointing counsel at this stage, and we are only talking about new trial motion for a practical matter, I would go ahead and do it, but I can't, so I am going to deny that."

Appellant's subsequent pro se motion for a new trial was denied. After exhausting his state remedies, appellant sought a writ of habeas corpus in federal court. The district court, adopting the magistrate's findings of law and fact, dismissed the petition. Menefield appealed, and we reverse.

## II.

### A.

The right of self-representation, long recognized in statute, first explicitly fell under the protection of the Constitution in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In *Faretta*, the Supreme Court, while noting the tension between a right of self-representation and the Sixth Amendment right to effective assistance of counsel, concluded that the principles of free choice and human dignity woven through the Bill of Rights dictate deference to a defendant's decisions to proceed without a lawyer. "It is the defendant ... who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'" *Id.* at 834, 95 S.Ct. at 2541 (quoting *Illinois v. Allen*, 397 U.S. 337, 350–51, 90 S.Ct. 1057, 1064, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring)).

*Faretta* struck the fundamental constitutional balance between the right to counsel and the right to self-representation; however, certain problems were clearly anticipated from the first formulation of the doctrine. Justice Blackmun, writing for the three dissenters, pointed out that *Faretta* left unresolved a series of important issues and questioned the federal court's ability to reconcile the procedural dilemmas raised by the self-representation rule. "How soon in the criminal proceeding must a defendant decide between proceeding by counsel or pro se? *Must he be allowed to switch in midtrial?*" *Faretta*, 422 U.S. at 852, 95 S.Ct. at 2549 (Blackmun, J., dissenting) (emphasis added).[2] The dissenters anticipated that "these questions ... [would] ... be answered with finality in due course," *id.*, and the issue of waiver and reassertion of the right to counsel has been frequently addressed in state or federal court. Although we have previously considered the interaction of the right to coun-

---

On appeal, Menefield does not contest whether the trial court's inquiry satisfied the knowing and intelligent waiver standard articulated in *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). We therefore do not consider the constitutionality of the state waiver inquiry.

2. The question in this case, of course, does not involve a midtrial switch but, instead, a change of course in a post-trial proceeding.

sel and the right to self-representation in the context of pretrial and trial proceedings, we now face a question of first impression in our circuit: is a criminal defendant entitled to the assistance of an attorney at a post-trial hearing when prior to trial he waived the right to counsel and chose to represent himself?

### B.

■ *Faretta* notwithstanding, we have long recognized that the right to counsel is among the most fundamental rights of our criminal justice system. "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other right he may have." *Penson v. Ohio*, 488 U.S. ——, ——, 109 S.Ct. 346, 352, 102 L.Ed.2d 300 (1988) (quoting Schaefer, *Federalism and State Criminal Procedure*, 70 Harv.L.Rev. 1, 8 (1956)). Our adversary system is premised on the theory that the clash of trained counsel will best serve the court's truth-seeking function. Without the "guiding hand of counsel," the defendant may be unable to muster an adequate defense. *See Argersinger v. Hamlin*, 407 U.S. 25, 31, 92 S.Ct. 2006, 2009, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright*, 372 U.S. 335, 344–45, 83 S.Ct. 792, 796–97, 9 L.Ed.2d 799 (1963). Absence of counsel may frustrate the truth-seeking and fairness goals of the system. Justice Sutherland's observations, clear and accurate in 1932, are no less valid today.

> Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty,

> he faces the danger of conviction because he does not know how to establish his innocence.

*Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932). Because of the centrality of the right to counsel, we will not deny a defendant that right during a critical stage of the prosecution unless compelling circumstances require us to do so.

### C.

Before discussing the interaction between the *Faretta* right and the right to counsel, we must first answer the question whether a defendant possesses the latter right at the time of the motion for a new trial. The right to effective assistance of counsel only attaches to certain parts of the criminal prosecution. The right to counsel was originally a trial right, but the Sixth Amendment provision of effective assistance of counsel has been extended to various "critical" stages of the prosecution. *See, e.g., Estelle v. Smith*, 451 U.S. 454, 471, 101 S.Ct. 1866, 1877, 68 L.Ed.2d 359 (1981) (psychiatric interview); *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) (sentencing); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (pre-trial line-up); *White v. Maryland*, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) (preliminary hearings). *See also Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (appeals). *But cf. United States v. Ash*, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973) (photographic arrays). Critical stages of the prosecution include all parts of the prosecution implicating substantial rights of the accused. *Mempa*, 389 U.S. at 134, 88 S.Ct. at 256.

■ Since this circuit has never settled the question of whether a motion for a new trial is a critical stage of the prosecution, we must consider the factors enumerated by the Supreme Court. First, if failure to pursue strategies or remedies results in a loss of significant rights, then Sixth Amendment protections attach. *Id.* 389 U.S. at 135, 88 S.Ct. at 257. Second, where

skilled counsel would be useful in helping the accused understand the legal confrontation, we find that a critical stage exists. Third, the right to counsel applies if the proceeding tests the merits of the accused's case. *Ash*, 413 U.S. at 311, 93 S.Ct. at 2574.

Under *Ash*, although the state trial court expressed doubt as to the significance of the motion, we think there can be little question that the motion for a new trial under California law is a critical stage of the prosecution. California penal code section 1181 provides nine distinct grounds for a new trial. The statutory provisions are the exclusive grounds for the trial judge to overturn the conviction of the accused. *See People v. Dillard*, 168 Cal.App.2d 158, 335 P.2d 702, 707 (1959).

Although section 1181 lists several independent grounds for reversing the jury, the most important, and most frequently invoked, provision is section six, providing for a new trial if the evidence is insufficient to support the verdict.[3] Unlike an appellate court, the trial judge hearing a motion for a new trial reviews the evidence de novo and examines the record independently. The trial court "is under the duty to give the defendant the benefit of its independent conclusion as the sufficiency of credible evidence to support the verdict." *People v. Veitch*, 128 Cal.App.3d 460, 467, 180 Cal.Rptr. 412 (Div. Two 1982). The trial judge sits as the "13th juror" in evaluating the weight of the evidence against the defendant. As a practical matter, the motion for a new trial is the defendant's last opportunity for an unconstrained review on the merits of the evidence against him. On appeal, both jury conclusions and the factual decisions of the trial court are either immune from review or treated under a highly deferential standard. *See, e.g., People v. McDaniel*, 16 Cal.3d 156, 127 Cal.Rptr. 467, 545 P.2d 843, *cert. denied*, 429 U.S. 847, 97 S.Ct. 131, 50 L.Ed.2d 119 (1976); *People v. Love*, 51 Cal.2d 751, 336 P.2d 169 (1959). *See generally* Witkin, *California Criminal Procedure* §§ 581, 582 (1985). Consequently, the defendant's failure to take full legal advantage of the statutory right substantially diminishes his ability to challenge the sufficiency of the evidence.

Not only are substantive rights involved but counsel can enable the defendant to protect these rights. An effective motion for a new trial ordinarily requires a lawyer's understanding of legal rules and his experience in presenting claims before a court. The presence of trained counsel at this stage insures that the most favorable arguments will be presented and "that the accused's interests will be protected consistently with our theory of criminal prosecution." *Wade*, 388 U.S. at 227, 87 S.Ct. at 1932. Consequently, we hold that the right to counsel attaches to the motion for a new trial stage.[4]

### III.

Since we conclude that there is a constitutional right to counsel at the time of a new trial hearing, we must now determine whether the trial court erred in denying appellant's post-trial request for appoint-

---

3. "When a verdict has been rendered or a finding made against the defendant, the court may, upon his application, grant a new trial, in the following cases only:

> . . . . .

> 6. When the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed;

> . . . . .

4. The Supreme Court has expressed a limited concern with the effect on the efficient administration and investigation of justice of expanding the right to counsel. *See Ash*, 413 U.S. at 314, 93 S.Ct. at 2576. There are, indeed, potential costs to providing counsel at the postconviction stage. However, as a general matter, the motion for a new trial is simply one part of the basic trial court litigation, and the trial attorney can handle the motion. In the unusual case, the proceedings might be delayed for preparation of a transcript or to allow counsel to familiarize himself with the case. Nevertheless, we think that this occasional delay does not rise to the level of the heavy burden on police investigation discussed in *Ash* which would justify the denial of counsel.

ment of counsel, and for a continuance which would have enabled appointed counsel to prepare an adequate motion. Because the right to counsel is so central to our concepts of fair adjudication, we are reluctant to deny the practical fulfillment of the right—even once waived—absent a compelling reason that will survive constitutional scrutiny.

We are certainly unwilling to deny counsel because of some conception that the defendant's initial decision to exercise his *Faretta* right and represent himself at trial is a choice cast in stone. It is not surprising that a criminal defendant, having decided to represent himself and then having suffered a defeat at trial, would realize that he would be better served during the remainder of the case by the assistance of counsel. A criminal defendant may initially assert his right to self-representation for reasons that later prove unsound.[5] The accused may doubt the willingness of an appointed attorney to represent his interests. More often, the accused may have a baseless faith in his ability to mount an effective defense. The lure of self-representation may, however, exact a significant price; lost at trial, the defendant may miss important opportunities and even create gaping holes in his own case. The accused has little recourse against the failings caused by his own inartfulness. *See United States v. Rowe,* 565 F.2d 635 (10th Cir. 1977) (defendant representing himself may not claim ineffective assistance of counsel). Forcing the defendant to stumble through post-trial proceedings serves neither the individual nor our system of adversarial justice well. Therefore, although we recognize that the right to counsel—once waived—is no longer absolute, we start with the strong presumption that a defendant's post-trial request for the assistance of an attorney should not be refused. *See United States v. Holman,* 586 F.2d 322 (4th Cir.1978) (per curiam) (pro se plaintiff at trial retained constitutional right to counsel at sentencing).[6]

There are times when the criminal justice system would be poorly served by allowing the defendant to reverse his course at the last minute and insist upon representation by counsel. *See United States v. Studley,* 783 F.2d 934, 938 (9th Cir.1986); *United States v. Leavitt,* 608 F.2d 1290, 1293 (9th Cir.1979). When, for example, for purposes of delay, criminal defendants have sought continuances on the eve of trial, we have refused to disrupt the proceedings to accomodate their wishes. In determining whether the trial court abused its discretion in refusing to grant a continuance, courts of appeals have considered whether the continuance would adversely affect witnesses, counsel, the court, and the government; whether there have been other continuances; whether legitimate reasons exist for the delay; whether the delay is the defendant's fault; and whether a denial would prejudice the defendant. *Studley,* 783 F.2d at 938. The state argues that this test should be extended to post-trial proceedings.

There is, however, a substantial practical distinction between delay on the eve of trial

---

5. Because of the potentially detrimental effect of the right of self-representation on the defendant's case, federal courts have been unwilling to find a waiver of the right to counsel absent a knowing and intelligent judgment on the record. *See, e.g., United States v. Wadsworth,* 830 F.2d 1500, 1504 (9th Cir.1987). The trial court is required to make a formal record showing that the defendant explicitly waived counsel and was aware of the nature of the charges against him, the potential penalties, and the dangers and disadvantages of self-representation. *See United States v. Rylander,* 714 F.2d 996, 1005 (9th Cir.1983), *cert. denied,* 467 U.S. 1209, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984). Absent such assurances on the record, the reviewing court will not permit deprivation of the assistance of counsel.

6. *But see Grandison v. State,* 305 Md. 685, 506 A.2d 580, 613, *cert. denied,* 479 U.S. at 873, 107 S.Ct. 38, 93 L.Ed.2d 174 (1986) (upholding unexplained denial of counsel at sentencing). *Grandison* has not gone uncriticized. Two justices dissented from the denial of a writ of certiorari.

Even at midtrial in a non-bifurcated proceeding, a trial court's unexplained refusal to permit a defendant to revoke his assertion of the right of self-representation would surely constitute an abuse of discretion. A trial court cannot insist that a defendant continue representing himself out of some punitive notion that that defendant, having made his bed, should be compelled to lie in it. *Grandison,* 479 U.S. at 876, 107 S.Ct. at 40 (Marshall, J., dissenting from denial of certiorari).

and delay at the time of a post-trial hearing. *Cf. United States v. Kennard,* 799 F.2d 556 (9th Cir.1986) (per curiam) (absolute right to counsel in retrial after defendant represented himself in initial trial). Delay immediately prior to trial engenders a significant potential for disruption of court and witness scheduling. Witnesses may have travelled long distances and may be unable to accommodate more than one trip. Losing or substantially inconveniencing witnesses may prejudice the trial and the efficient administration of justice. Shifting lengthy trials may disrupt the court's docket.

Conversely, it is unlikely that a continuance *after* the verdict will substantially interfere with the court's or the parties' schedules. Witnesses and jurors will have been dismissed. Moreover, the hearing on a post-trial motion is generally a brief affair, lasting substantially less than a day. Rescheduling such a hearing—more likely than not—will not involve a significant disruption of court scheduling. While we are aware that as a general matter it may be more efficient to have the motion for a new trial presented when the issue is fresh in the minds of the parties and court, that is an insufficient interest to warrant denying defendants the assistance of counsel. We therefore hold that, at least in the absence of extraordinary circumstances, an accused who requests an attorney at the time of a motion for a new trial is entitled to have one appointed, unless the government can show that the request is made for a bad faith purpose.

## IV.

 Once the principles of waiver are clearly enumerated, the task of applying

the standards to this case becomes fairly simple. Here, there is no indication that appellant was attempting to manipulate the right to counsel for any improper purpose. The record reveals that Menefield made a valiant, if ultimately futile, attempt to comply with the rules of procedure at trial. Moreover, the transcript of the hearing shows that the trial court predicated its judgment not on bad faith but solely on its determination that appointment of counsel would require a continuance.

Appellee argues that Menefield's pretrial dismissal of two attorneys proves his bad faith. While repeated firings of counsel may in some circumstances evidence an improper motive, pretrial dismissals should ordinarily have little influence on the determination of whether a post-conviction motion for appointment of counsel is improper. Usually, the unsettling experience of trial, as well as its unsatisfactory result, will be the source of a defendant's discontent with his own services and, consequently, the basis for his post-trial motion for the assistance of counsel. In any event, two prior decisions to dismiss counsel constitutes insufficient evidence standing alone to warrant denying the right to counsel. Without substantially more evidence of bad faith on the record, we cannot conclude that Menefield's post-trial request for appointment of counsel was made for an improper purpose. We reverse [7] the district court's denial of the writ of habeas corpus and order the court to issue the writ.

**REVERSED AND REMANDED**

---

**7.** Under harmless error jurisprudence, Sixth Amendment violations that pervade trial require automatic reversal of the tainted proceedings. *See Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *Chapman v. California,* 386 U.S. 18, 23 n. 8, 87 S.Ct. 824, 828 n. 8, 17 L.Ed.2d 705 (1967) (citing *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)). The parties do not suggest that the rule should be different when the error pervades a post-conviction hearing. Following remand, the state court must determine whether, in the cir-

cumstances of this case, Menefield can receive as adequate review of his conviction by newly appointed counsel as he would have had if he had been represented by counsel on his motion for new trial in the first instance. It may be that, because of the passage of time or problems in reconstructing the record, he cannot, in which case a new trial may be necessary. *See Bland v. Alabama,* 356 F.2d 8, 15 (5th Cir.1965), *cert. denied,* 383 U.S. 947, 86 S.Ct. 1203, 16 L.Ed.2d 210 (1966).