UNITED STATES of America

v.

Lee B. PHILLIPS.

Civil No. HNM–96–1347.
Criminal No. B–93–0331.

United States District Court,
D. Maryland.

June 30, 1997.

Lynne A. Battaglia, United States Attorney for the District of Maryland, Stuart A. Berman, Assistant United States Attorney, Baltimore, MD, for U.S.

Lee B. Phillips, pro se.

## MEMORANDUM AND ORDER

MALETZ, Senior Judge.[1]

Currently pending before the court is the motion of Lee B. Phillips to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (1994), *amended by* Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214. Phillips contends: (1) that he was denied the effective assistance of counsel; (2) that his trial was tainted by prosecutorial misconduct; and (3) that the court erred in determining his sentence. For the reasons set forth below, the motion is denied.

### I. Background

In 1985, Phillips founded Earle–Briggs, a Maryland corporation, whose primary business was the provision of computer programming and software as a contractor and subcontractor to the United States military. At all times relevant to this case, Phillips, through his shares and those of his family, controlled at least 50.2 percent of the corporation. In addition, Phillips served as Earle–Briggs's chief executive officer, chairman of the board, and secretary.

The criminal conduct in this case related to a line of credit that Earle–Briggs maintained with the First National Bank of St. Mary's ("First National"). Under the terms of this line of credit, Earle–Briggs was permitted to submit invoices to the bank that also had been submitted to the United States or another contractor for work that Earle–Briggs had performed. First National would loan Earle–Briggs a portion of the invoice amount that Earle–Briggs was then to repay with interest upon being paid by the government or other contractor. In this manner, Earle–Briggs was able to obtain rapid payment for its work.

In November of 1990, Earle–Briggs began to deviate substantially from the terms of its agreement with First National. Invoices were submitted to the bank that had not yet been sent to the contractors because the work on those contracts had not yet been completed. In May of 1991, the fraud escalated. Phony invoices were submitted to the bank for work that had not yet been awarded

to Earle–Briggs, let alone performed. A total of 21 fraudulent invoices were submitted by Earle–Briggs to First National, and the total loss incurred by the bank was more than $240,000.

First National learned of the fraudulent invoice scheme in June of 1992, at which time it immediately cut off Earle–Briggs's line of credit, essentially putting the corporation out of business. Upon learning of this development, Phillips resigned from Earle–Briggs. Leonard Gray, an officer of First National, testified that when he telephoned Phillips to discuss what the bank had learned and to set up a meeting, Phillips did not react with any surprise or protestation of innocence, but rather, simply stated that he had resigned and that the bank would have to deal with the new officers of the corporation. Subsequently, Phillips did meet with Gray at which time he continued to insist that the bank would have to proceed with his successors.

The government's primary evidence of Phillips's knowledge of and participation in the fraudulent invoice scheme was the testimony of two Earle–Briggs employees, Richard Botwright and Jerry Thrutchley. Botwright, the corporation's chief financial officer, testified that, up until his own resignation in March of 1992, he prepared the phony invoices and submitted them to the bank under Phillips's specific directions and explicit approval.

Thrutchley, who joined Earle–Briggs in 1991 and became president of the corporation during the summer of that year, testified that he learned of the scheme in a meeting with Phillips and Botwright. According to Thrutchley, Phillips instructed Botwright to explain the fraudulent invoice procedure and then sat silently by as Botwright complied with his directive. After Botwright resigned from Earle–Briggs, Thrutchley prepared the last group of fraudulent invoices.

In addition to the testimony of Botwright and Thrutchley, Phillips's former secretary, Gail Greenlee, testified that on several occasions she heard Phillips asking Botwright whether certain invoices had been submitted. Another Earle–Briggs employee, Sheila Mat-

1. Of the United States Court of International     Trade, sitting by designation.

tingly, recalled Phillips shouting at Thrutchley "get the money, I don't care how you do it."

A jury convicted Phillips of twelve counts of bank fraud and aiding and abetting in violation of 18 U.S.C. §§ 1344 and 2. Phillips was sentenced to 27 months imprisonment, three years of supervised release, $50,000 in restitution, and a $600 special assessment. Phillips made three separate motions for release pending appeal and two motions for new trial, all of which were denied. The Fourth Circuit affirmed his conviction and sentence, *United States v. Phillips,* No. 94–5210, slip op., 1996 WL 44095 (4th Cir. Feb. 5, 1996) (unpublished), and the Supreme Court denied Phillips's petition for a writ of certiorari. *Phillips v. Unites States,* ——— U.S. ———, 116 S.Ct. 1449, 134 L.Ed.2d 568 (1996).

## II. Ineffective Assistance of Counsel

### A.

Phillips first contends that he was denied the effective assistance of counsel in violation of the Sixth Amendment. He identifies several respects in which he claims that the performance of his counsel was deficient. He alleges that counsel failed to properly investigate; failed to call witnesses in his defense; failed to introduce relevant evidence; and failed to "review, investigate, or subpoena corporate records that could prove [his] innocence." With respect to these and all other claimed deficiencies, the court finds that Phillips was not deprived of the effective assistance of counsel.

Phillips must satisfy a two-part test to obtain relief. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, he must show that his counsel's performance was deficient. With respect to this requirement, he must demonstrate that his counsel's representation fell below an objective standard of reasonableness. In making this determination, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct.

at 2065 (citation omitted). Second, Phillips must establish that the deficient performance prejudiced the defense. To meet this requirement, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 694, 104 S.Ct. at 2068.

■ Phillips first contends that his attorney was ineffective for failing to conduct an adequate investigation. Specifically, he claims that counsel erred by failing to investigate his claim that there was over $180,000 missing from Earle–Briggs. He suggests that this money "was under the direct control of Mr. Thrutchley and Mr. Botwright," but otherwise fails to explain what use counsel could have made of this information or how it would have changed the outcome of the trial. Thus, this claim must fail.

■ Phillips further claims that counsel erred by failing to investigate his claim that government witnesses—namely, Jerry Thrutchley and other Earle–Briggs directors—were involved in a hostile corporate takeover of Earle–Briggs. He contends that an investigation of this claim would have uncovered that Thrutchley benefitted from Earle–Briggs's failure by stealing its copyrighted software product. Phillips has not produced any evidence in support of this claim. Nor has he demonstrated how this information would have changed the outcome of the trial. Accordingly, this claim too must be rejected.

■ Phillips alleges that counsel failed to investigate after he advised that the bank had previously charged him with civil bank fraud, but dropped the charges just before taking depositions. An attorney has a duty to make a reasonable investigation or to make a reasonable decision that makes a particular investigation unnecessary. *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066–67. However, a defendant's allegation that his attorney conducted an inadequate investigation does not warrant relief absent a proffer of what favorable testimony the witness or witnesses would have given. *Bassette v. Thompson,* 915 F.2d 932, 940–41 (4th Cir. 1990), *cert. denied,* 499 U.S. 982, 111 S.Ct.

1639, 113 L.Ed.2d 734 (1991). The bank's civil suit (and its decision whether to proceed with its claims in the face of Phillips's personal bankruptcy filing) was entirely collateral to the testimony of bank employees about the scheme to defraud. More importantly, Phillips has not proffered any witnesses or otherwise shown what an investigation of the bank's civil suit would have uncovered. Accordingly, any failure to investigate or argue facts relating to that suit does not constitute a violation under *Strickland.*

■ Phillips faults his trial counsel for failing to conduct a "proper investigation" or an "audit." He urges that "a complicated case such as [his] surely demands a complete accounting." Phillips claims that an "audit" of Earle–Briggs would have shown that his family guaranteed and invested money in Earle–Briggs; that the company had a strong cash flow in early 1992; that the company thrived under his leadership; and that when he was president of Earle–Briggs, all accounts were in order and no false invoices were submitted to the bank. Phillips made precisely these points himself during his own testimony—but also admitted that he left Earle–Briggs in mid–1992 because of its financial collapse. Phillips fails to proffer any specific evidence that counsel should have found, or argued, but failed to. In any event, trial counsel's decision regarding the scope of a "proper investigation" or an "audit" of Earle–Briggs involved tactics well within professionally reasonable conduct that should not be second-guessed by this court under *Strickland.*

■ Phillips claims that an "audit" of First National would have shown that the bank allowed persons who were not authorized by Earle–Briggs to use the Earle–Briggs line of credit; that the bank was misapplying money it received for payment on the Earle–Briggs line of credit; and that the bank extended line of credit loans without notification or authorization. No unauthorized persons are identified and no link is alleged between the alleged misapplication of funds and the fraudulent invoices that were the subject matter of this case. This claim is far too vague to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Roach v. Martin,* 757 F.2d 1463, 1476 (4th Cir.), *cert. denied,* 474 U.S. 865, 106 S.Ct. 185, 88 L.Ed.2d 154 (1985).

■ Phillips next contends that trial counsel was ineffective for failing to call witnesses who could have testified that Botwright lied to the grand jury. He claims that (1) John Hargraves and Jim Buckingham, both directors of Earle–Briggs, should have been called to testify to refute Botwright's testimony that Phillips directed him [Botwright] to send false invoices to the bank; and (2) Gail Greenlee should have been called to testify to refute Botwright's testimony that Phillips received and opened all of the mail. The record shows that Phillips's counsel made a tactical decision not to call these witnesses because their testimony would have been harmful to the defense. Counsel's strategy choice was well within the range of professionally reasonable judgments.

■ Even if the court were to conclude that the failure to call these witnesses constituted deficient performance, Phillips would only be entitled to relief if he could demonstrate a reasonable probability that presentation of the omitted evidence would have changed the result at trial. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. The government's case against Phillips was substantial, based largely on the testimony of two confederates—Richard Botwright and Jerry Thrutchley. Considered in that light, it is the court's conclusion that the testimony of these witnesses would not have changed the outcome of the trial.

■ Phillips argues that his trial counsel erred by failing to introduce a tape recording in which government witness Sheila Mattingly states that she never saw Phillips do anything illegal or unethical. Counsel states in his affidavit that Mattingly reports on the tape the same sort of statements she testified to overhearing Phillips make, i.e., "get the money, I don't care how you do it." He also states that other comments by Mattingly during the tape recorded interview would have been harmful to the defense. Counsel's decision not to play the tape was fundamen-

tally tactical and "within the range of reasonably competent representation."

■ Lastly, Phillips claims that his counsel was ineffective for failing to "review, investigate, or subpoena corporate records that could prove [his] innocence." This claim too must be rejected because Phillips makes no attempt to specify which records or explain how they would have had any effect on the outcome of his trial.

### B.

■ Phillips also claims ineffective assistance of his post-conviction counsel, Stephen Shechtel. Shechtel filed a motion for new trial based on newly-discovered evidence under Rule 33 of the Federal Rules of Criminal Procedure. He filed this motion on June 3, 1994, almost three months after the judgment of conviction was entered. This court denied the motion for new trial. Phillips now complains that Shechtel erred by refusing an evidentiary hearing on the motion for new trial; by not "know[ing] the Federal Court rules and procedures;" and by failing to advise him of his right to appeal from the denial of that motion.

■ As a threshold issue, the court must determine whether Phillips even has a constitutional right to counsel for the purpose of filing a motion for new trial based on newly-discovered evidence under Rule 33. To obtain relief for ineffective assistance of counsel, a defendant must have a right to counsel. *See Wainwright v. Torna,* 455 U.S. 586, 587–88, 102 S.Ct. 1300, 1301–02, 71 L.Ed.2d 475 (1982). *See also Evitts v. Lucey,* 469 U.S. 387, 397 n. 7, 105 S.Ct. 830, 837 n. 7, 83 L.Ed.2d 821 (1985) ("the right to effective assistance of counsel is dependent on the right to counsel itself"). As discussed below, the court concludes that he does not.

The Supreme Court has held that prisoners have no right to counsel in a collateral proceeding. *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987). *See United States v. Lee,* 513 F.2d 423, 424 (D.C.Cir.) (holding that a federally convicted defendant is not entitled under the Sixth Amendment to appointment of counsel on a motion for new

trial), *cert. denied,* 423 U.S. 916, 96 S.Ct. 225, 46 L.Ed.2d 146 (1975). However, the Ninth Circuit has extended the right to counsel to include motions for new trial made before entry of the judgment of conviction. *See Menefield v. Borg,* 881 F.2d 696, 699 (9th Cir.1989). More specifically, in *Menefield,* the court held that under California law, a motion for new trial made before entry of the judgment of conviction is a "critical stage" of the criminal proceedings, because "it is the defendant's last opportunity for an unconstrained review on the merits of the evidence against him." *Id.*

The Seventh Circuit also has recognized that in the Illinois circuit courts a post-trial motion for new trial is a "critical stage" of trial—for which the right to counsel applies—because a written post-trial motion is necessary to preserve an issue for appellate review. *See Johnston v. Mizell,* 912 F.2d 172, 176 (7th Cir.1990), *cert. denied,* 498 U.S. 1094, 111 S.Ct. 982, 112 L.Ed.2d 1067 (1991). Similarly, in *Williams v. Turpin,* 87 F.3d 1204, 1210 (11th Cir.1996), the Eleventh Circuit has held that a defendant has a right to counsel at the motion for new trial stage of Georgia's Unified Appeal Procedure because (1) "[a]s in trial proceedings, the defendant has the right to be present and mentally competent at the motion for new trial proceedings" and (2) "if the defendant fails to raise an ineffective assistance claim in a motion for new trial, such a claim is deemed waived in all further proceedings, including the direct appeal."

By contrast, with respect to motions for new trial filed in the federal system under Rule 33, there is no requirement that certain challenges be made or that they be made in writing in order to avoid waiver, and the defendant does not have the right to be present at a hearing on the motion. *See* Federal Rule of Criminal Procedure 43(a) (presence of the defendant required at arraignment, time of the plea, every stage of the trial including the impaneling of the jury and the return of the verdict, and imposition of sentence); *see also Barber v. United States,* 142 F.2d 805, 806–07 (4th Cir.1944) (holding that a federally convicted defendant

has no right to appear at a hearing on a motion for new trial).

Based on *Finley* and *Lee* and the foregoing distinction, coupled with the fact that Phillips filed his motion for new trial after entry of his judgment of conviction, the court concludes that Phillips did not have a right to counsel for the purpose of filing his motion under Rule 33. Given that Phillips had no Sixth Amendment right to counsel for the purpose of filing his motion for new trial, he cannot complain of ineffective assistance of counsel. *See Torna,* 455 U.S. at 587–88, 102 S.Ct. at 1301–02.

### III. Prosecutorial Misconduct

Phillips next contends that his trial was tainted by prosecutorial misconduct. Specifically, he raises questions of improper closing argument, knowing use of perjured testimony, and intimidation of a witness. Because Phillips failed to make objections at trial or raise these issues on direct appeal, the government argues that this claim is procedurally defaulted. A claim raised for the first time in a § 2255 motion generally is not reviewable unless the defendant demonstrates "both (1) 'cause' excusing his ... procedural default, and (2) actual prejudice' resulting from the errors of which he complains." *United States v. Frady,* 456 U.S. 152, 168, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982). Phillips has failed to make this showing. For that reason, the court is constrained to reject this claim. As discussed below, even if Phillips could demonstrate "cause" and "actual prejudice" for his failure to raise these issues, the court concludes that Phillips's claim of prosecutorial misconduct is without merit.

### A.

Phillips contends that several of the prosecutor's remarks during closing argument were sufficient to deprive him of a fair trial. To succeed on this claim, Phillips must show that the remarks were improper and that they "prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." *United States v. Adam,* 70 F.3d 776, 780 (4th Cir.1995). Four factors are relevant to determining prejudice:

(1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

*Id.*

Only one of the remarks to which Phillips objects warrants discussion. In closing argument, the prosecutor made the following statement: "Mr. Phillips claims the company made a profit, but you won't find any documents in evidence showing a profit." This statement is inconsistent with government exhibit 25A, Earle–Briggs's state income tax return for 1988 showing a $5,589 profit. The court therefore finds this statement to be improper. However, because (1) the comment at issue was an isolated remark, (2) the remainder of the evidence showed substantial losses, (3) the case against Phillips was strong, and (4) the court instructed the jury that counsel's statements were not evidence, the court cannot conclude that the improper comment substantially prejudiced Phillips's right to a fair trial.

### B.

Phillips next contends that the government elicited false testimony from one of its primary witnesses, Richard Botwright. Botwright testified that Phillips first directed him to submit false invoices to the bank in November 1990. Phillips maintains that he could not have developed the scheme in November 1990 and that Earle–Briggs in fact paid down the debt during that month. In support of this claim, Phillips has submitted bank records that were admitted into evidence as government exhibits. After careful consideration of these records, the court concludes that they do not demonstrate that Botwright perjured himself. Thus, this argument must be rejected.

The court also rejects Phillips's contention that the government elicited false testimony from John Candela, the president

of First National. Candela testified that the bank demanded payment from Thrutchley and Phillips as guarantors on the note and the line of credit after their June 15, 1992 meeting. Phillips contends that the demand letters were in fact sent out before the meeting. In support of his claim, Phillips has submitted copies of two demand letters dated June 11, 1992. Even if Candela lied when he stated the letters were sent out after the June 15, 1992 meeting, this testimony was not material to any issue in the case and thus there is no "reasonable likelihood" that it could have affected the judgment of the jury. *See United States v. Kelly*, 35 F.3d 929, 933 (4th Cir.1994). More importantly, Phillips has not shown that the government knew Candela testified falsely. *See United States v. Tanner*, 61 F.3d 231, 236 (4th Cir.1995) (citing *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1176–77, 3 L.Ed.2d 1217 (1959) (requiring a knowing use of perjured testimony to establish a violation of due process)), *cert. denied*, —— U.S. ——, 116 S.Ct. 925, 133 L.Ed.2d 854 (1996).

### C.

Phillips contends that his due process rights were violated by the government's intimidation of defense witness Monte Bagley, an officer of Earle–Briggs. He alleges that the prosecutor and an FBI agent threatened Bagley with scrutiny of his income taxes just prior to Bagley's taking the witness stand. To succeed on this claim, Phillips must show that the intimidation amounts to "substantial government interference with a defense witness' free and unhampered choice to testify." *See United States v. Saunders*, 943 F.2d 388, 392 (4th Cir.1991), *cert. denied*, 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992). If Phillips is able to show a substantial government interference, the inquiry shifts to whether it was prejudicial or harmless. *Id.*

Phillips claims that the government's intimidation of Bagley caused him to lose composure on the witness stand and forget what college he was graduated from. Because Bagley testified as a defense witness and because Phillips does not claim that the government intimidated Bagley into testifying

against him or that Bagley testified falsely, the court finds that any comments by the government—whether or not construed as coercive—did not constitute a "substantial government interference" with defense witness Bagley's "free and unhampered choice to testify." Accordingly, this contention is meritless.

### IV. Loss under USSG § 2F1.1

Lastly, Phillips contends that the court erred in determining his sentence. In particular, he challenges the court's loss calculation under the Sentencing Guidelines, claiming that the court should not have accepted the loss amount stipulated to by the parties. See U.S. Sentencing Guidelines Manual § 2F1.1 (1995). Phillips did not object at sentencing to the stipulated amount. Generally, a defendant who fails to raise an objection at sentencing and on direct appeal waives review of his claim absent a showing of "cause" and "actual prejudice." *See United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594–95, 71 L.Ed.2d 816 (1982).

The court need not consider the issue of "cause" because Phillips has failed to show any "actual prejudice." Under the Guidelines, "the loss need not be determined with precision." USSG § 2F1.1, comment. (n.8). Rather, "[t]he court need only make a reasonable estimate of the loss, given the available information." *Id.* First National presented several different loss figures. All of the loss figures were within the same guideline range, and the figure stipulated to by counsel was one of the lower figures. Based on the parties' stipulation, the court determined the loss amount to be $246,207. Even if counsel had not entered into a stipulation, there was ample evidence—based on First National bank officer Marjorie Lord's spreadsheets and submissions by the bank to the probation office—for the court to have independently determined a loss within the same guideline range. Accordingly, Phillips suffered no actual prejudice from the court's acceptance of the loss amount stipulated to by the parties.

### V. Conclusion

For the reasons set forth above, Phillips is not entitled to relief on any of his claims

brought pursuant to § 2255. Therefore, the motion is denied.