**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

BOBBY THOMPSON,
    *Defendant-Appellant.*

No. 07-50351

D.C. No.
CR-03-00847-
ABC-02

OPINION

Appeal from the United States District Court
for the Central District of California
Audrey B. Collins, Chief District Judge, Presiding

Argued and Submitted
November 3, 2009—Pasadena, California

Filed December 3, 2009

Before: Thomas G. Nelson, Jay S. Bybee and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## COUNSEL

Karen L. Landau, Oakland, California, for defendant-appellant Bobby Lee Thompson.

Christine C. Ewell and Lamar Webster Baker, Assistant United States Attorneys, United States Attorneys Office for the Central District of California, Los Angeles, California, for plaintiff-appellee United States of America.

## OPINION

MILAN D. SMITH, JR., Circuit Judge:

Following a jury trial, Defendant-Appellant Bobby Lee Thompson (Thompson) was convicted of seven counts related to his possession, distribution, and manufacture of phencyclidine (PCP), and one count of being a felon in possession of a firearm. Thompson appeals the district court's order permitting him to represent himself at trial, and the district court's subsequent denial of Thompson's request for a continuance, and reappointment of counsel. We affirm.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Thompson was indicted in August 2003. On August 26, he appeared before a magistrate judge who appointed counsel to represent him. Thompson's appointed counsel filed two applications to secure Thompson's release on bail, the second of which was granted on October 23, 2003. After the district court granted Thompson numerous continuances of the trial date, it set trial for March 1, 2005.

On February 28, 2005, both Thompson and his counsel were present at what would become the first of many "final"

---

[1] Thompson also appeals the district court's denial of his motion to suppress a wiretap for lack of necessity and its refusal to hold a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), regarding alleged omissions from the wiretap affidavit. We affirm the district court's order denying the motion to suppress and its refusal to hold a *Franks* hearing in a concurrently filed memorandum disposition.

pretrial conferences. However, the following morning Thompson failed to appear for trial. His counsel reported to the court that she had received a telephone call that morning from Thompson's wife, who said Thompson had been brought to a mental health center at 2:30 in the morning because he was "acting very strange." Thompson was then transferred from the mental health center to BHC Alhambra Hospital, where he spent the next two weeks.

Following Thompson's discharge, the court appointed Dr. Saul Faerstein to conduct a psychiatric evaluation for the purpose of determining Thompson's competency to stand trial. Dr. Faerstein examined Thompson, interviewed Thompson's wife, and reviewed Thompson's hospital records. Dr. Faerstein concluded that Thompson was competent to stand trial, that Thompson had the mental capacity to understand the nature of the legal proceedings and charges against him and to cooperate with his counsel, and that Thompson had the mental capacity to understand all of his legal rights and to waive those rights, should he choose to do so.

In light of Dr. Faerstein's evaluation, the court held a conference on May 9, 2005. At that hearing, the parties agreed with Dr. Faerstein's conclusion that Thompson was competent to stand trial, and the court set a new trial date for May 31, 2005. The court also scheduled another pretrial conference to take place May 23.

Despite appearing along with counsel at the final pretrial conference on May 23, Thompson again failed to appear for trial on May 31. Thompson's counsel explained that she had received a telephone call the day before, informing her that Thompson had again been admitted to the hospital for psychiatric evaluation. In light of Thompson's failure to appear, the district court scheduled a status conference for June 2, 2005, at which time the district court would hear the government's request to remand Thompson.

On June 2, Thompson appeared in court. However, his counsel stated that Thompson was so severely medicated that she could not communicate with him and requested that he be remanded into custody so that his medication could be stabilized. Following an attempted colloquy with Thompson, the court concluded that Thompson was not ready to go to trial because he was not fit to assist in his defense. The court also noted the "strange coincidence" stemming from Thompson's faithful appearance at all pretrial conferences, followed by his failure to appear on the date set for trial. Turning to the remand issue, the court expressed its concern over remanding Thompson. It noted that it was not clear when Thompson would be ready for trial, but indicated that given Thompson's repeated failure to appear for trial, the court needed more information. The court determined that in order to have his medication stabilized and assure Thompson's appearance at trial, the proper course was to remand Thompson into custody and direct the Metropolitan Detention Center (MDC) to conduct an evaluation of Thompson's mental status. Thompson's counsel agreed with the court's assessment that remand was in Thompson's best interest. The court remanded Thompson and scheduled a status conference for June 14 so that it could reevaluate Thompson's mental health in light of MDC's report. The court also set July 12 as the new trial date.

On June 10, MDC issued a report concluding that Thompson's "behaviors and presentation are not consistent with any major mental illness or cognitive disorder, [but] rather they appeared more consistent with someone who was attempting to exaggerate or fabricate symptomology." Based on its preliminary diagnosis, MDC concluded that Thompson exhibited signs of malingering.

The district court addressed MDC's evaluation at the June 15 status conference. It determined that in light of that evaluation, and Thompson's failure to appear for trial, he posed a flight risk and was to remain in custody until the July 12 trial date. Following the court's remand order, Thompson moved

to relieve his counsel. Finding that nothing in the record supported Thompson's position that there had been a lack of communication with counsel and that his request for new counsel was another attempt to further delay trial, the court denied the request. Finally, the court set a final pretrial conference for July 11.

On July 6, Thompson renewed his request for appointment of new counsel. The district court granted the request, adjourned the final pretrial conference to August 2, and scheduled a new trial date for August 9. Despite its earlier finding that Thompson was purposely delaying trial, the court continued to accommodate Thompson's requests for continuances. Thompson asked for two more continuances, which the court graciously granted, and once again adjourned the trial to October 4.

On September 30, the court conducted a hearing concerning Thompson's motion to suppress. After the court denied the suppression motion, Thompson complained about the performance of his newly appointed counsel. The court found, once again, that Thompson was attempting to delay trial. Based on that finding, the court denied Thompson's request to relieve counsel. Following a brief recess in which the court instructed Thompson and his counsel to confer, Thompson's counsel told the court that Thompson was prepared to go to trial on October 4.

At the final pretrial conference on October 3, Thompson renewed his request to relieve counsel, again citing a lack of communication. The court engaged in a lengthy inquiry outside the government's presence in which it directed questions to both Thompson and his counsel. Following that exchange, the court once again denied Thompson's request.

The morning of trial, Thompson advised the court that he wished to represent himself and would need additional time to prepare for trial. The court conducted a *Faretta* hearing and

strongly urged Thompson to reconsider defending himself, noting multiple times that Thompson was unfamiliar with the law or court procedure. However, Thompson insisted that he would be able to learn as long as he had a "few more days to study." Thompson also rejected the court's offer for his current counsel to act as standby counsel, and informed the court that his family was attempting to retain an attorney to help him. When the court asked Thompson to clarify what role this other attorney would play, Thompson stated, "It's my intention to represent myself, and that was just — you asked me would I prefer to have [current counsel] as stand-by, and I said — I said no, and I just mentioned that my family was inquiring about having someone help me." Though the court continued to express its belief that Thompson was simply trying to delay trial, it granted Thompson's request to represent himself. The court then continued the trial to October 25, 2005, and set another final pretrial conference for October 17.

At the final pretrial conference on October 17, the court appointed Richard Novak, Esq. (Novak) to act as standby counsel and adjourned the trial, yet again, to December 13 to give Thompson and Novak time to prepare. At an October 31 status conference, the court granted Thompson's request that Novak be appointed counsel of record. As a result, the court again vacated the dates set for pretrial conference and trial, and set trial for January 31, 2006.

Following two more motions to suppress, the court adjourned the trial date to August 15, 2006, which was once again adjourned at the parties' joint request to October 3. At an August 21 status conference, Thompson sought to terminate his relationship with Novak and proceed pro se, now for the second time. *Id.* The court conducted a second *Faretta* hearing and explained to Thompson the disadvantages of self-representation. Finding Thompson to have knowingly and voluntarily waived his right to counsel, the court granted his request to proceed pro se. At a September 18 status conference, Thompson requested another continuance due to the fact

that he had not been granted additional hours in the law library at MDC. The court granted Thompson's request and adjourned trial to January 16, 2007, but warned there would be no further continuances.

On December 6, 2006, the court entertained Thompson's request for a newly appointed attorney to serve as standby counsel. Realizing that it had never relieved Novak of his role as standby counsel, the court invited Novak to the December 6 hearing "out of an abundance of caution." While the court denied Thompson's request for newly appointed standby counsel, finding it to be another attempt to delay trial, it permitted Novak to continue serving as standby counsel. Both Thompson and Novak agreed to that arrangement.

In a moment of prescience, Novak asked the court what might happen if Thompson decided on the morning of trial that he no longer wished to represent himself. Although the court declined to give a definitive answer, it noted that it would be inclined to deny such a request if made on the eve of trial or at a time at which Novak was not ready to proceed. However, the court stated that if Thompson were to make such a request in a timely manner, it would be inclined to appoint Novak as counsel of record.

The court held another status conference on January 4, 2007, at which time Thompson asked for another continuance for the purpose of filing a motion to suppress. The court denied the request for the continuance, but permitted Thompson to file the motion by January 11.

A final pretrial conference took place on January 12. Not surprisingly, Thompson told the court that he was not prepared to go to trial because he was still working on the suppression motion due the day before. He asked the court to either give him more time to file the motion, or to appoint counsel to represent him at trial. After hearing from the government, the court asked Novak whether he was prepared to

represent Thompson at trial commencing January 16. While
Novak expressed his continued availability to assist Thomp-
son at trial, he stated that he "wouldn't be anywhere near . . .
ready" to conduct the trial himself. As a result, the court
denied Thompson's requests for a continuance and for Novak
to again be counsel of record. In the district court's view, "the
system has been stymied . . . by the fact that [Thompson] does
not want to exercise his right to trial." It found that there were
no legitimate reasons for further delay, stating that "it is the
Court's finding based upon its sincere belief and evaluation of
— firsthand — I've been here in the trial court — Mr.
Thompson does not want to go to trial," and "I am hundred
percent [sic] sure if I appointed new counsel, we would be
back here again in another four months with Mr. Thompson
asking again under *Faretta* to represent himself because of
breakdown in communications." The court also noted that it
had made it quite clear to Thompson that no further continu-
ances would be granted, especially on the eve of trial, and that
he had ample time to prepare given the number of continu-
ances to date. After the court denied Thompson's requests, it
settled on a final voir dire with the parties and adjourned for
the commencement of trial.

In a move that had become all too familiar to both the court
and counsel, Thompson failed to appear for trial on January
16. Rather, on the morning that trial was set to begin, doctors
at MDC informed the court that after the January 12 final pre-
trial conference, Thompson was complaining of depression
and of experiencing auditory hallucinations. Though he
refused to appear for trial, Thompson agreed to attend a hear-
ing for the purpose of discussing his mental health (the Janu-
ary 16 Hearing). Well aware that Thompson was representing
himself, the court asked whether Thompson would like coun-
sel appointed for the purpose of the January 16 Hearing.
Thompson indicated that he would, and the court appointed
Novak to represent Thompson at the January 16 Hearing.

In the district court's view, the January 16 Hearing con-
cerned "the issue of [Thompson's] mental health readiness for

trial." The court asked three MDC doctors to testify concerning their observations of Thompson following the January 12 final pretrial conference. As a result of that testimony, the court ordered the medical/psychological staff at MDC to submit a report by January 24 detailing Thompson's response to treatment. MDC's report concluded that there "is no evidence that Thompson is suffering from disruption in his thought process or hallucinations of any type," and that Thompson "is functioning within normal limits."

The January 16 Hearing concluded with the district court adopting a deliberate and careful assessment of the way in which to proceed. Addressing counsel's concerns about Thompson's continued self-representation, the district court stated that it was not making a finding, at that time, that it was necessary to revoke Thompson's pro se status and reinstate Novak as counsel of record. Rather, the court stated that any decision concerning Thompson's continued self-representation would need to be made in light of further updates regarding Thompson's mental health, which it ordered from both Dr. Faerstein and MDC. Again, out of an abundance of caution, the court asked Novak to pursue a parallel track should the court later determine that Thompson was not fit to represent himself at trial.

At the next status conference held on January 25, the government moved to reschedule the trial date as soon as possible. It argued that a further evaluation as to Thompson's mental health was unnecessary in light of recently recorded telephone calls it had obtained, which demonstrated Thompson was intentionally feigning mental illness in order to delay trial. The court declined ruling on the motion at that time, and determined to hold another mental health hearing on February 8 (the February 8 Hearing).

At the February 8 Hearing, the court began,

> The hearing that we're about to have this afternoon, which is a continuation, in essence, of an earlier

> hearing at which doctors testified, the Court had not deemed to be a competency hearing; but rather, in the minute order, I think I indicated that these were hearings to determine whether the Defendant's mental state would allow us to proceed with trial.

The court echoed this sentiment one more time, stating that "this hearing, certainly, is not a competency hearing." After hearing testimony once again from MDC doctors, including its own review of the telephone calls the government submitted, the court concluded that Thompson had been malingering when he feigned mental illness after the January 12 conference, and that he did so for the purpose of delaying trial on January 16. The court also expressed the need to issue a detailed order consisting of its factual findings.

On February 9, in a thorough and well-documented order, the district court concluded that it was unnecessary to conduct a full competency hearing, that Thompson was malingering his mental health symptoms, and that it had been Thompson's purpose to delay his trial. Finally, the court set trial for February 13, 2007.

Following a three-day trial, a jury convicted Thompson on all counts. While Novak remained standby counsel during the trial, Thompson represented himself. Thompson participated in jury selection, engaged in cross-examination of witnesses, and delivered a brief closing argument.

## STANDARD OF REVIEW AND JURISDICTION

We have jurisdiction pursuant to 28 U.S.C. § 1291. While we have not clarified the standard of review of a district court's order allowing a defendant to represent himself at trial, *see United States v. Kaczynski*, 239 F.3d 1108, 1116 (9th Cir. 2001), the parties are in agreement that an abuse of discretion standard applies in this case.[2] In any event, we review

---

[2] The parties seem to base their agreement on our recent decision in *United States v. Ferguson*, 560 F.3d 1060, 1070 n.6 (9th Cir. 2009), where

the district court's factual findings underlying its decision for clear error. *Kaczynski*, 239 F.3d at 1116. We review the decision to grant or deny a continuance that arguably implicates a defendant's right to counsel for abuse of discretion. *United States v. Garrett*, 179 F.3d 1143, 1144-45 (9th Cir. 1999) (en banc).

## DISCUSSION

Thompson raises two issues on appeal. First, he argues that the district court erred when it allowed him to exercise his right to self-representation on August 21, 2006. He asserts that the district court would have reached a different conclusion on that issue if *Indiana v. Edwards*, 128 S. Ct. 2379 (2008), which was decided after Thompson's trial, had been decided before the district court ruled on his request to represent himself. Second, Thompson contends that the district court erred when it refused to reappoint him counsel, which would also have required that the court grant him another trial continuance.

### A.   Competency and Self-Representation

#### 1.   *Indiana v. Edwards*

In *Indiana v. Edwards*, the Supreme Court addressed whether the standard for assessing a defendant's competency to stand trial applies to the question of mental competence for purposes of self-representation at trial. 128 S. Ct. at 2383. Prior to *Edwards*, we held that where a defendant was found competent to stand trial under *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam), and had voluntarily and intelli-

---

we instructed that, on remand, the district court's decision to allow a defendant who lacks mental competency to conduct trial proceedings was a "discretionary decision." We see no reason to depart from that formulation and thus apply an abuse of discretion standard here.

gently waived his Sixth Amendment right to counsel under *Faretta v. California*, 422 U.S. 806 (1975), a court was *required* to permit the defendant to proceed pro se. *See United States v. Hernandez*, 203 F.3d 614, 620 (9th Cir. 2000). In other words, prior to *Edwards*, "a defendant's competence to waive the right to counsel [was] measured by the same standard under which competence to stand trial [was] evaluated." *Id.* at 621 n.8. But *Edwards* considered that issue to be a question the Court had not resolved. 128 S. Ct. at 2383.

**[1]** "[A]ssum[ing] that a criminal defendant has sufficient mental competence to stand trial (*i.e.*, the defendant meets *Dusky*'s standard) and that the defendant insists on representing himself during that trial," *id.* at 2385, *Edwards* held that states are free to assess the defendant's competence for purposes of self-representation under a different competency standard, *id.* at 2386. The Court explained that

> the Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so. That is to say, the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* but who still suffer from *severe mental illness* to the point where they are not competent to conduct trial proceedings by themselves.

*Id.* at 2387-88 (emphasis added). *Edwards* did not adopt a specific standard, *id.* at 2388, but instead recognized that the trial judge "will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant," *id.* at 2387. Thus, after *Edwards*, at least one relevant consideration for a district court, should it choose to require a higher level of competence for self-representation, is whether a defendant who is otherwise able to satisfy the *Dusky* competence standard may nev-

ertheless be "unable to carry out the basic tasks needed to present his own defense without the help of counsel." *Id.* at 2386.

## 2. *United States v. Ferguson*

[2] We next consider the impact of *Edwards* in this case. In *United States v. Ferguson*, we considered whether *Edwards* would have affected the district court's pre-*Edwards* decision to allow a defendant to proceed pro se. 560 F.3d at 1067-70. In answering this question affirmatively, we found that many statements in the record suggested the district court might have ruled differently under an *Edwards* standard. *Id.* at 1070 n.6. First, we found that the pre-*Edwards* psychiatric reports were "of limited value," because they did not consider "whether Defendant is able 'to carry out the basic tasks needed to present his own defense without the help of counsel.' " *Id.* at 1068 (quoting *Edwards*, 128 S. Ct. at 2386). Second, we noted that the defendant's behavior was "decidedly bizarre." *Id.*; *see also id.* at 1068-69 (discussing defendant's demand that counsel follow six made-up "duties," his insistence that the case be settled "in the private," and his request to dismiss the case pursuant to the Uniform Commercial Code). Finally, we addressed the defendant's behavior at trial and sentencing, in which he did "absolutely nothing." *Id.* at 1069. We also noted that both the district court and the parties repeatedly referred to the defendant's "absolute right" to represent himself, once declared competent to stand trial. *Id.* at 1067. We considered it particularly troubling that the district court had stated prior to trial that "it would be desirable to have [the defendant] declared incompetent," and that "it is terrible to let [the defendant] represent himself," as well as the district court's comments at sentencing that it had "never heard of an example of somebody that behaved at trial the way [the defendant] had." *Id.* at 1069 (internal quotation marks omitted). We thus remanded to the district court "for the limited purpose of determining whether *Edwards* would have affected the district court's decisions." *Id.* at 1070. In

doing so, we held that "*Edwards* does not *compel* a trial court to deny a defendant the exercise of his or her right to self-representation; it simply *permits* a trial court to require representation for a defendant who lacks mental competency to conduct trial proceedings." *Id.* at 1070 n.6.

**[3]** This case is markedly different from *Ferguson*. Unlike *Ferguson*, here the district court held a hearing to determine whether Thompson's mental state would permit the court to proceed with trial, and expressly noted that the hearing was not a competency hearing. Thus, there is no indication that the district court conflated the standards for assessing Thompson's competency to stand trial and his competency to represent himself at trial. Rather, the court noted several times that both the January 16 Hearing and the February 8 Hearing concerned Thompson's readiness for trial, *not* his competency to stand trial. At the January 16 Hearing, the district court also expressed its willingness to revoke the defendant's pro se status, but declined to do so in the absence of further information from doctors. That same willingness was conspicuously absent in *Ferguson*, where the trial court candidly expressed its perceived inability to do anything but let the defendant represent himself once he was determined to be competent. Here, by contrast, the court conducted two evidentiary hearings in order to inform itself concerning Thompson's trial readiness. Based on those hearings, the court issued detailed findings of fact that Thompson was simply attempting to delay trial. The record provides ample support for those findings.

**[4]** The record is also bereft of any statement by either the district court or the parties that because there was no dispute about Thompson's competency to stand trial, he had an "absolute right" to defend himself. *Compare Ferguson*, 560 F.3d at 1068. Moreover, Thompson's behavior throughout the proceedings was not "decidedly bizarre." Rather, he engaged in lengthy colloquies with the district court in which he seemed acutely aware of what was occurring. Indeed, the district court noted the "strange coincidence" in connection with Thomp-

son's repeated failure to appear for trial while he was faithfully present at all other court proceedings. Such coincidences are consistent with the district court's finding that Thompson was malingering in order to delay trial.

Finally, while some of the psychiatric reports considered Thompson's mental competence to work *with* counsel at trial —the pre-*Edwards* standard—the February 8 Hearing proceeded under the assumption that Thompson would be representing himself. Therefore, the district court's decision to proceed with trial focused on Thompson's competence to represent himself in trial proceedings. The record also indicates that contrary to the actions of the defendant in *Ferguson*, Thompson participated extensively throughout his trial.

**[5]** Therefore, we see no reason to remand to the district court in light of *Edwards.* Indeed, the district court did exactly what *Edwards* and *Ferguson* instruct; that is, it determined whether Thompson lacked the mental capacity to conduct trial proceedings. The district court's conclusion that Thompson had such a capacity was not an abuse of discretion.

## B.  Continuance and Reappointment of Counsel

Thompson argues that the district court erred when it denied his request for reappointment of counsel at the final pretrial conference on January 12. After noting that it had granted at least twelve or thirteen continuances at Thompson's request, the district court treated Thompson's latest request as a request for a continuance based on the fact that Thompson was not prepared to represent himself. The district court denied the request.

**[6]** The district court's denial of Thompson's request can be analyzed as either a denial of a continuance or as a denial of a motion to substitute counsel. *United States v. Nickerson*, 556 F.3d 1014, 1020 (9th Cir. 2009). "A [d]istrict [c]ourt's primary reasons for not allowing a defendant new counsel

may determine which analysis to apply." *United States v. Nguyen*, 262 F.3d 998, 1001-02 (9th Cir. 2001). Here, the district court stated multiple times that it was denying Thompson's "request for a continuance" based on its well-founded belief that Thompson was deliberately trying to delay trial. Though it also remarked that it was "denying the request for counsel," it based its denial on the fact that no counsel could be ready for trial by January 16, and proceeded to recount the litany of continuances previously granted to Thompson for the purpose of giving him time to prepare. Thus, we consider the district court to have denied Thompson a continuance.

**[7]** When a decision to grant or deny a continuance implicates a defendant's Sixth Amendment right to counsel, a court must balance several factors to determine if the denial was " 'fair and reasonable.' " *United States v. Studley*, 783 F.2d 934, 938 (9th Cir. 1986) (quoting *United States v. Leavitt*, 608 F.2d 1290, 1293 (9th Cir. 1979) (per curiam)). These factors include:

> [1] whether the continuance would inconvenience witnesses, the court, counsel, or the parties;
> [2] whether other continuances have been granted;
> [3] whether legitimate reasons exist for the delay;
> [4] whether the delay is the defendant's fault; and
> [5] whether a denial would prejudice the defendant.

*Studley*, 783 F.2d at 938. "When denying a continuance, especially one that arguably implicates the defendant's right to counsel, the district court should summarize in the record its reasons for the denial." *Garrett*, 179 F.3d at 1147. However, "a continuance may be denied even when that denial results in the defendant's being unrepresented at trial." *Studley*, 783 F.2d at 938 (internal quotation marks omitted).

**[8]** "In addition, a court must be wary against the 'right of counsel' being used as a ploy to gain time or effect delay." *United States v. Kelm*, 827 F.2d 1319, 1322 (9th Cir. 1987),

*overruled on other grounds by United States v. Heredia*, 483
F.3d 913 (9th Cir. 2007). As a result, "a court may force a
defendant to proceed pro se if his conduct is 'dilatory and hin-
ders the efficient administration of justice.' " *United States v.
Meeks*, 987 F.2d 575, 579 (9th Cir. 1993) (quoting *Kelm*, 827
F.2d at 1322).

**[9]** On January 12, 2007—three and a half years after the
initial pretrial conference—the district court held a final pre-
trial conference. At that conference, which occurred the day
before trial was scheduled to begin, Thompson stated that he
was not prepared to go to trial and asked the court to reap-
point counsel. The district court's decision to deny that
request was more than fair and reasonable. Indeed, we have
seldom reviewed a record of proceedings overseen with the
level of patience and conscientiousness demonstrated by our
able district court colleague in this case. According to the
record, the court's decision to deny the continuance was based
on the numerous continuances previously granted, Thomp-
son's lack of good faith, the court's own prior warnings that
no more continuances would be granted, the fact that any fur-
ther continuance meant Thompson would remain in custody,
and the court's near certain belief that Thompson would even-
tually ask to represent himself again in order to delay trial.
Thompson's conduct up to that point was clearly "dilatory"
and the district court properly noted the manner in which
Thompson had "stymied" the system. In addition, the court
had appointed Novak as standby counsel for the trial. Consid-
ering all these circumstances, the district court did not err in
denying another continuance. *See Studley*, 783 F.2d at 939
(affirming denial of continuance where denial resulted in the
defendant being unrepresented, trial had been delayed three
months after the defendant's arrest, request for continuance
had not been made in good faith, trial had already been con-
tinued several times, and defendant would not have obtained
counsel had continuance been granted); *United States v. Rob-
inson*, 967 F.2d 287, 291 (9th Cir. 1992) (same where defen-
dant had been given two previous continuances, district court

cautioned the defendant before he requested relief of counsel, and court appointed standby counsel during the trial); *Garrett*, 179 F.3d at 1146-47 (same where record demonstrated the "patience and consideration" the district court afforded to the defendant over a one year period and district court stated that the motion for continuance was being made to delay trial).

**[10]** Moreover, there is no dispute in the record that Thompson knowingly and intelligently waived his right to counsel after being fully advised by the district court of the dangers of proceeding pro se. *Cf. Kelm*, 827 F.2d at 1322 (district court properly denied a trial continuance to a defendant who persistently refused to accept an appointed attorney, hire his own attorney, or expressly waive his right to an attorney); *Meeks*, 987 F.2d at 579 (court erred in denying the defendant's motion to substitute counsel where the court did not make the defendant aware of the dangers of proceeding pro se such that the defendant did not knowingly and intelligently waive his right to counsel). Indeed, Thompson does not dispute his knowing and intelligent waiver. Rather, he argues that under *Indiana v. Edwards* the district court was compelled to deny his request for self-representation or reappoint counsel. As we explained above, *Edwards* does not so hold. *See Ferguson*, 560 F.3d at 1070 n.6.

Finally, Thompson's reliance on *Menefield v. Borg*, 881 F.2d 696 (9th Cir. 1989), is misplaced. In *Menefield*, we considered "whether the trial court erred in denying [the defendant's] post-trial request for appointment of counsel, and for a continuance which would have enabled appointed counsel to prepare an adequate motion." 881 F.2d at 699-700. We went on to hold that "an accused who requests an attorney at the time of a motion for a new trial is entitled to have one appointed, unless the government can show that the request is made for a bad faith purpose." *Id.* at 701. However, we expressly recognized that "[t]here are times when the criminal justice system would be poorly served by allowing the defendant to reverse his course at the last minute and insist upon

representation by counsel." *Id.* at 700 (citing *Studley* and *Leavitt*). In line with our precedent, we pointed out, for example, that when "for purposes of delay, criminal defendants have sought continuances on the eve of trial, we have refused to disrupt the proceedings to accommodate their wishes." *Id.* That is precisely the situation presented here.

Accordingly, the district court did not abuse its discretion in denying Thompson's request for a continuance.

## CONCLUSION

**[11]** For the reasons described, we affirm the district court's orders permitting Thompson to represent himself at trial and denying his request for a continuance.

**AFFIRMED.**