FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
               *Plaintiff-Appellee*,

            v.

JONATHAN LEE READ,
               *Defendant-Appellant*.

No. 17-10439

D.C. No.
2:15-cr-00933-
DLR-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Douglas L. Rayes, District Judge, Presiding

Argued and Submitted February 8, 2019
Arizona State University, Phoenix

Filed March 14, 2019

Before: Michael Daly Hawkins, Milan D. Smith, Jr., and
Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Hawkins

# SUMMARY[*]

## Criminal Law

The panel reversed a criminal judgment and remanded in a case in which the defendant—who stabbed his cellmate while serving a sentence in the Federal Correctional Institute in Phoenix, Arizona—was convicted of assault with a deadly weapon with intent to bodily harm, and assault with a deadly weapon resulting in serious bodily injury, in violation of 18 U.S.C. § 113(a).

The panel rejected the defendant's arguments that the government did not sufficiently allege and prove the jurisdiction element of § 113(a), which prohibits assaults "within the special maritime and territorial jurisdiction of the United States."

The panel held that in light of *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), a district court commits reversible error by permitting defense counsel to present a defense of insanity over a competent defendant's clear rejection of that defense.

The panel held that the district court did not err by revoking his pro se status under *Indiana v. Edwards*, 554 U.S. 164 (2008), on the basis of his "decidedly bizarre" and "nonsensical" arguments.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the defendant waived his claimed that the indictment must be dismissed because his trial did not comply with the Speedy Trial Act.

---

## COUNSEL

Davina T. Chen (argued), Glendale, California, for Defendant-Appellant.

Peter S. Kozinets (argued), Assistant United States Attorney; Krissa M. Lanham, Deputy Appellate Chief; Elizabeth A. Strange, First Assistant United States Attorney, District of Arizona; United States Attorney's Office Phoenix, Arizona; for Plaintiff-Appellee.

---

## OPINION

HAWKINS, Senior Circuit Judge:

We address a question of first impression: whether a criminal defendant has the Sixth Amendment right to demand that counsel not present an insanity defense. We hold that *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), requires under the facts of this case that the demand be honored. We therefore reverse and remand for a new trial.

### FACTS AND PROCEEDINGS BELOW

*a. Read was charged with assaulting his cellmate.*

While serving a sentence for attempted robbery in the Federal Correctional Institution in Phoenix, Arizona ("FCI-Phoenix"), Jonathan Lee Read stabbed his cellmate thirteen times with a homemade knife. Read's relationship with his

cellmates had previously been without tension. When detained, Read claimed he had no memory of the attack.

Read was charged with one count each of assault with a deadly weapon with intent to do bodily harm, and assault with a deadly weapon resulting in serious bodily injury, both in violation of 18 U.S.C. § 113(a), which prohibits assaults "within the special maritime and territorial jurisdiction of the United States." *Id.*

### b. Read was ultimately deemed competent to stand trial.

Upon the motion of appointed counsel, Read was initially admitted to the Metropolitan Detention Center in Los Angeles for evaluation of his competency. Two months later, Dr. Lesli Johnson, Ph.D., a forensic psychologist, issued a report diagnosing Read with schizophrenia and severe cannabis use disorder. Dr. Johnson's diagnosis of schizophrenia was based on Read's delusional thoughts regarding Christianity, Satan, and demonization. She noted that Read appeared to respond to internal stimuli and that his thought and speech patterns were disorganized when he discussed his delusionally-focused beliefs. The district court accepted the report, found Read incompetent to stand trial, and ordered him committed for hospitalization, treatment, and restoration, pursuant to 18 U.S.C. §§ 4241 and 4247. Read was admitted to the Federal Medical Center in Springfield, Missouri.

Four months later, Dr. Allison Schenk, Ph.D., a clinical psychologist, determined that Read was competent to stand trial. Dr. Schenk also took note of Read's unusual beliefs, reporting that Read claimed he was experiencing the sensation of having his stomach cut with a knife, caused by a person's use of a "voodoo doll" against him. Dr. Schenk

determined that Read suffered from schizotypal personality disorder and cannabis use disorder, but nonetheless determined that Read was competent to stand trial.

Based on Dr. Schenk's evaluation, and without objection from defense counsel, the court found Read competent to stand trial.

   *c.  Read was evaluated to determine his sanity during the assault.*

Read's counsel arranged for an examination by Dr. John R. Walker III, Psy.D., a neuropsychologist, to assess his state of mind at the time of the alleged assault.  Dr. Walker reported many of the same behaviors as had Drs. Johnson and Schenk.  He concluded that Read's psychosis rendered him unable to form criminal intent, and that Read was likely still psychotic at the time of the examination.

Read's appointed counsel then filed a Notice of Insanity Defense.  In response, the government requested an examination of Read pursuant to 18 U.S.C. § 4242(a).  The court granted the government's motion.

Read was admitted to the Federal Medical Center in Butner, North Carolina ("FMC-Butner") for the examination.  FMC-Butner eventually issued a report concluding that Read was not insane at the time of the alleged offense.  The report was prepared by Sumandeep Kaur, a doctoral psychology intern, under the supervision of forensic psychologist Dr. Angela Walden Weaver, Ph.D.  Ms. Kaur reported that, during the evaluation, Read claimed he was suffering from "demonization" rather than mental illness.  She diagnosed Read with schizotypal personality disorder and cannabis use disorder, and opined that Read was able to appreciate the nature, quality, and wrongfulness

of his alleged criminal acts.  The district court ordered Read's return to the District of Arizona.

### d.  Read successfully moved to proceed without counsel.

Read then asked to proceed without counsel.  Following a *Faretta* hearing,[1] the court held that Read had a right to do so, finding that he "knowingly and voluntarily waived the right to counsel."  Read's appointed counsel was named as standby counsel.

### e.  The court vacated its order and reappointed counsel for Read.

Prior to the final trial management conference, advisory counsel told the government that Read might abandon an insanity defense in favor of a defense based on demonic possession.  At the final pretrial conference, Read did just that.  The judge subsequently asked Read if he intended to call any witnesses to discuss his mental condition.  Read said that he would call Dr. Walker, the neuropathologist who had opined that Read was insane at the time of the alleged assault.  However, shortly thereafter, Read told the court, "I completely withdraw the insanity.  That's not an option for me."  The judge asked Read to clarify, and Read confirmed that he did not wish to present an insanity defense.

The government responded that, if Read was withdrawing his insanity defense, then Dr. Walker could offer no relevant testimony.  When the court asked him what defense he intended to pursue, Read responded:

---

[1] *See Faretta v. California*, 422 U.S. 806 (1975).

My civil rights have been violated. I've been tied in with so many other people that I have nothing to do with. Incarcerated. My faith, my belief system is not—what is that—extreme Islamic. I believe in—I'm a believer in Christianity. And there's been a lot of things going on in prison that the prison system itself has brought upon itself.

The court responded that Dr. Walker's testimony about his mental condition would not be relevant to such a defense. Read then said he wanted Dr. Walker to testify about cases of demonic possession that he had observed in inmates besides Read. The court affirmed that such testimony would not be relevant. Read responded, "All right. I guess we can scratch—scratch that."

The court then asked Read if he wished to continue representing himself. Read said that he did. The court asked Read's standby counsel, if he had any concerns about Read's competence to proceed without counsel. Mr. Williams said that he was concerned because Read did not seem to understand the legal distinction between a defense of insanity and his proposed defense. The court again asked standby counsel if he thought Read was competent to represent himself. Counsel said that he did not know.

The court responded that it would consider whether Read's standby counsel should be reappointed. Standby counsel explained that he would present an insanity defense if reappointed; he noted that the very reason that Read had wanted to proceed pro se in the first place was because he did not want an insanity defense.

Over Read's objection, the district court reappointed standby counsel to act as Read's counsel. The court noted,

"[T]he Constitution permits [judges] to insist upon representation by counsel for those competent enough to stand trial[,] . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves."  The court reasoned that "[t]his standard is met where the defendant's behavior is 'decidedly bizarre' and his arguments in defense to the charges against him are nonsensical."  The court found that Read's "beliefs are bizarre and his representation will be wholly ineffective," because "[h]is anticipated defense, that he is possessed by demons and that other inmates are also possessed, is not a legal defense and is based on his bizarre beliefs."  Despite these comments, at no point did the district court revisit Read's competency.

Counsel ably, but unsuccessfully, proceeded to present an insanity defense at trial.  Read was convicted and sentenced to concurrent 82-month terms.  This timely appeal followed.

## DISCUSSION

## I.  Whether the Jurisdictional Element Was Alleged and Proved

Read was charged under 18 U.S.C. § 113(a), which prohibits an assault "within the special maritime and territorial jurisdiction of the United States."  *Id.* This jurisdiction includes "[a]ny lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building."  18 U.S.C. § 7(3).

Read argues that the government presented insufficient evidence that the assault took place "within the special maritime and territorial jurisdiction of the United States." Read also claims the indictment must be dismissed for failing to state the jurisdictional element of the offenses. Neither argument is persuasive.

a. *Sufficiency of the Evidence*

The existence of federal jurisdiction over the place in which the offense occurred is an element of the offenses defined at 18 U.S.C. § 113(a), which must be proved to the jury beyond a reasonable doubt. *See United States v. Gaudin*, 515 U.S. 506, 510 (1995). Read claims that the government's failure to submit historical documents establishing FCI-Phoenix's jurisdictional status means that it failed to prove the jurisdictional component of the charged offenses. But, while historical documents can be sufficient to prove that land is subject to the "special maritime and territorial jurisdiction of the United States," they are not necessary. Our cases addressing convictions under statutes whose jurisdictional component demands proof that a bank is federally insured are instructive; we have stressed in that context that while documentary evidence *can* be used to establish jurisdiction, "bank employees' uncontradicted testimony of a bank's insured status can sufficiently support the jury's conclusion that this element was proven beyond a reasonable doubt." *United States v. Corbin*, 972 F.2d 271, 272 (9th Cir. 1992) (per curiam) (citing *United States v. Campbell*, 616 F.2d 1151, 1153 (9th Cir. 1980). Likewise, uncontradicted testimony from inmates or employees at a federal prison can establish the jurisdictional element of 18 U.S.C. § 113.

The government elicited precisely this type of testimony at trial. The victim testified he was an inmate "of the

Phoenix federal prison" at the time of the assault. Phillip Lopez, the officer who responded to the assault, testified he worked at the Federal Bureau of Prisons' male facility in Phoenix, and was employed by the United States Department of Justice, Federal Bureau of Prisons. None of the relevant testimony was objected to or contradicted at trial; nor, indeed, has Read ever alleged that FCI-Phoenix is not, in fact, subject to federal jurisdiction. Nor does Read deny that the assault took place at the prison. A reasonable juror could conclude from these statements that FCI-Phoenix was under federal jurisdiction at the time Read allegedly committed assault. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (noting that we must affirm a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.").

### b. *Sufficiency of the Indictment*

Read also argues that the indictment should be dismissed because it omitted the jurisdictional element of the two crimes charged. "When the sufficiency of the indictment is challenged after trial, it is only required that the necessary facts appear in any form or by fair construction can be found within the terms of the indictment." *United States v. Velasco-Medina*, 305 F.3d 839, 846 (9th Cir. 2002) (citations, brackets, and quotation marks omitted). "A defendant is not prejudiced where her counsel has notice of the omitted element and the jury is properly instructed regarding the missing element." *United States v. Arnt*, 474 F.3d 1159, 1162 (9th Cir. 2007).

Here, Read's counsel and the jury were adequately informed of the missing element. The indictment's express reference to 18 U.S.C. § 113(a) put Read's counsel on notice

of the jurisdictional element. *See Arnt*, 474 F.3d at 1162 (counsel "had notice" of the element "from the statute itself, specifically cited in the indictment[]"). And, the jury was properly instructed that the government had to prove the assaults took place in FCI-Phoenix. *See United States v. Warren*, 984 F.2d 325, 327–28 (9th Cir. 1993). Thus, the indictment was sufficient to support Read's conviction.

## II. Whether the District Court Erred by Permitting Counsel to Present an Insanity Defense

Read claims the district court violated his Sixth Amendment right to present a defense of his own choosing by terminating self-representation and permitting counsel to make an insanity defense. Reviewing de novo, *see United States v. Brown*, 859 F.3d 730, 733 (9th Cir. 2017), we hold that a district court commits reversible error by permitting defense counsel to present a defense of insanity over a competent defendant's clear rejection of that defense.

The trial judge here undoubtedly faced a difficult dilemma: whether to permit a defendant, competent and allowed self-representation but clearly mentally ill, to eschew a plausible defense of insanity in favor of one based in delusion and certain to fail. Although several of our sister circuits and many state courts recognize a defendant's right to refuse a defense of insanity,[2] we today face a question of

---

[2] These discussions of the insanity defense arise in a variety of procedural postures; some are dicta. *See Petrovich v. Leonardo*, 229 F.3d 384, 386–87 (2d Cir. 2000); *United States v. Marble*, 940 F.2d 1543, 1547 (D.C. Cir. 1991); *Lowenfield v. Phelps*, 817 F.2d 285, 292 (5th Cir. 1987); *Foster v. Strickland*, 707 F.2d 1339, 1343 & n.3 (11th Cir. 1983); *Snider v. Cunningham*, 292 F.2d 683, 685 (4th Cir. 1961); *State v. Fayle*, 658 P.2d 218, 228–29 (Ariz. Ct. App. 1982); *People v. Frierson*, 705 P.2d 396, 401–05 (Cal. 1985); *People v. Redmond*, 94 Cal.

first impression in this circuit.**[3]** The trial judge faced this question without the benefit of *McCoy*, which was not decided until after Read filed his opening brief in this appeal. We hold that, in light of *McCoy*, Read's Sixth Amendment rights were violated when the trial judge permitted counsel to present an insanity defense against Read's clear objection.

*McCoy* affirmed the defendant's autonomy to determine the "objectives" of a defense, 138 S. Ct. at 1508, a right the Supreme Court recognized in *Faretta v. California*, 422 U.S. 806 (1975). A represented defendant surrenders control over tactical decisions at trial while retaining the right to be the "master" of his or her own defense. *See Faretta*, 422 U.S. at 820. Counsel can choose "the objections to make, the witnesses to call, and the arguments to advance." *Gonzalez v. United States*, 553 U.S. 242, 249 (2008). But the

---

Rptr. 543, 548–49 (Cal. Ct. App. 1971); *Jacobs v. Commonwealth*, 870 S.W.2d 412, 418 (Ky. 1994), *overruled on other grounds by St. Clair v. Commonwealth*, 451 S.W.3d 597 (Ky. 2014); *State v. Lowenfield*, 495 So. 2d 1245, 1252 (La. 1985); *Commonwealth v. Simpson*, 689 N.E. 2d 824, 830–31 (Mass. Ct. App. 1998), *rev'd on other grounds*, 704 N.E.2d 1131 (1999); *Treece v. State*, 547 A.2d 1054, 1062 (Md. Ct. App. 1988); *State v. Gorthy*, 145 A.3d 146, 157 (N.J. 2016); *People v. Morton*, 570 N.Y.S.2d 846 (N.Y. App. Div. 1991); *People v. MacDowell*, 508 N.Y.S. 2d 870 (N.Y. Sup. Ct. 1986); *State v. Payne*, 808 S.E. 2d 476, 486 (N.C. Ct. App. 2017); *State v. Tenace*, 700 N.E. 2d 899, 908 (Ohio Ct. App. 1997); *State v. Peterson*, 689 P.2d 985, 992 (Or. Ct. App. 1984); *State v. Bean*, 762 A.2d 1259, 1266–67 (Vt. 2000); *State v. Jones*, 664 P.2d 1216, 1219–21 (Wash. 1983); *State v. Higa*, 685 P.2d 1117, 1119–20 (Wash. Ct. App. 1984); *State v. Felton*, 329 N.W.2d 161, 174–75 (Wis. 1983); *McLaren v. State*, 407 P.3d 1200, 1212–16 (Wy. 2017); *but see Hendricks v. People*, 10 P.3d 1231, 1241–44 (Colo. 2000) (permitting counsel, with leave of court, to impose insanity defense on defendant over defendant's objection).

**[3]** We expressly declined to decide whether such a right exists in *United States v. Kaczynski*, 239 F.3d 1108, 1118–19 (9th Cir. 2001).

defendant retains "ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal[.]" *Jones v. Barnes*, 463 U.S. 745, 751 (1983). As the Court explained in *McCoy*, the latter category of decisions "are not strategic choices about how best to *achieve* a client's objectives; they are choices about what the client's objectives in fact *are*." 138 S. Ct. at 1508–09.

In *McCoy*, the Court held that the decision of whether to admit guilt, even in the face of overwhelming evidence, is one of the choices that must remain with the defendant. McCoy was charged with murdering his estranged wife's mother, stepfather, and son; his counsel concluded the only way to avoid the death penalty would be to concede McCoy's guilt at both the guilt and penalty phases of his trial. *Id.* at 1505–07. McCoy clearly instructed his counsel not to concede his guilt, preferring a defense—every bit as bizarre as Read's—that "the victims were killed by the local police and that he had been framed by a farflung conspiracy of state and federal officials, reaching from Louisiana to Idaho" and "that even his attorney and the trial judge had joined the plot." *Id.* at 1513 (Alito, J., dissenting). Counsel nonetheless told the guilt and penalty phase juries that McCoy was guilty, and the jury returned three death verdicts. *Id.* at 1506–07.

The Supreme Court held that counsel's actions violated McCoy's Sixth Amendment "autonomy" right and remanded the case for a new trial. *Id.* at 1510–11. The Court noted that, although a concession of guilt might have been McCoy's best chance at avoiding the death penalty,

> the client may not share that objective. He may wish to avoid, above all else, the opprobrium that comes with admitting he

> killed family members. Or he may hold life in prison not worth living and prefer to risk death for any hope, however small, of exoneration. When a client expressly asserts that the objective of "*his* defence" is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt.

*Id.* at 1508–09 (citations omitted).

*McCoy*'s emphasis on the defendant's autonomy strongly suggests that counsel cannot impose an insanity defense on a non-consenting defendant. An insanity defense is tantamount to a concession of guilt. *See McLaren v. State*, 407 P.3d 1200, 1213 (Wyo. 2017). Moreover, a defense of insanity, like a concession of guilt, carries grave personal consequences that go beyond the sphere of trial tactics. A defendant may not wish to plead insane because of a firmly held "feeling that he was not mentally ill at the time of the crime." *Id.* Just as conceding guilt might carry "opprobrium" that a defendant might "wish to avoid, above all else," *McCoy*, 138 S. Ct. at 1508, "a defendant, with good reason, may choose to avoid the stigma of insanity." *Frendak v. United States*, 408 A.2d 364, 377 (D.C. Ct. App. 1979). A defendant may also prefer a remote chance of exoneration to the prospect of "indefinite commitment to a state institution." *Treece v. State*, 547 A.2d 1054, 1060 (Md. 1988).

The government's arguments to the contrary are not persuasive. First, the government claims that this case does not implicate the *McCoy* "objectives" because Read and his counsel "agreed on the fundamental objective of the defense: to persuade the jury that [Read] was not capable of being mentally responsible for the assault." This argument goes

too far.  While the best way to present the argument that "the devil made me do it" may well be through the "rubric" of an insanity defense, Read's goal was not merely to persuade the jury, in the best way possible, that he was not responsible for the alleged assaults.    To the contrary, he repeatedly emphasized that an insanity defense was inconsistent with his goals.

Second, the government argues there is no right to refuse an insanity defense beyond the "core" *McCoy* right to maintain factual innocence.  Because an insanity defense is tantamount to an admission of guilt, the government concedes that imposing it on a defendant who wishes to maintain factual innocence might violate the right announced in *McCoy*.  But, the government argues, when the defendant's preferred defense is not one of factual innocence, no separate right to refuse an insanity defense applies.

This argument fails because pleading insanity has grave, personal implications that are separate from its functional equivalence to a guilty plea.  True, *one* reason that an insanity defense should not be imposed on a defendant is that it can sometimes directly violate the *McCoy* right to maintain innocence.  However, even where this concern is absent, the defendant's choice to avoid contradicting his own deeply personal belief that he is sane, as well as to avoid the risk of confinement in a mental institution and the social stigma associated with an assertion or adjudication of insanity, are still present.  These considerations go beyond mere trial tactics and so must be left with the defendant.

The district court's violation of a defendant's Sixth Amendment right to choose his or her defense is a structural error, and the proper remedy is a new trial.  *See McCoy*, 138 S. Ct. at 1511.

## III. Whether the District Court Erred by Appointing Counsel

Read also argues that the district court should not have revoked his pro se status under *Indiana v. Edwards*, 554 U.S. 164 (2008), on the basis of his "decidedly bizarre" behavior and "nonsensical" arguments.  We find that the district court's *Edwards* holding was not erroneous.

Trial judges may "insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Id*. at 178.  The Court specified no single standard for such "gray-area" cases because a trial judge "will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." *Id.* at 177.

However, we have identified several considerations that bear on the *Edwards* inquiry.  One is the psychiatric evidence.  Reports evaluating whether a defendant meets the lesser standard of competency to stand trial "are of limited value," *United States v. Ferguson*, 560 F.3d 1060, 1068 (9th Cir. 2009), but reports evaluating whether the defendant can represent himself or herself are more helpful, *see United States v. Thompson*, 587 F.3d 1165, 1173 (9th Cir. 2009).  Another issue is the defendant's behavior.  Behavior that is "decidedly bizarre," *Ferguson*, 560 F.3d at 1068, or "disruptive or defiant," *United States v. Johnson*, 610 F.3d 1138, 1144 (9th Cir. 2010), weighs in favor of appointing counsel.  Conduct indicating the defendant is "acutely aware of what was occurring" cuts the other way. *Thompson*, 587 F.3d at 1173.  A defendant's "bizarre and wholly ineffective behavior" while proceeding pro se indicates that counsel should be appointed.  *Ferguson*, 560 F.3d at 1069.

Read's claim that the district court applied the wrong legal standard fails. The district court explained that, in the context of a mentally ill defendant, the *Edwards* standard is met when "the defendant's behavior is 'decidedly bizarre' and his arguments in defense to the charges against him are nonsensical.'" The court discussed the considerations raised in *Ferguson*, *Thompson*, and *Johnson*: Read's psychiatric evaluations, behavior at trial, and ability to present an effective defense.

Nor did the district court abuse its discretion by appointing counsel. The district court noted Read's diagnosis of schizophrenia and his unusual beliefs. It also noted that Read's behavior was "bizarre," and that his proposed defense would likely be "wholly ineffective." Read cites to *Johnson* for the proposition that a defendant has a right to espouse "unorthodox defenses . . . to the bitter end." *See* 610 F.3d at 1147. But there, we found "no evidence that [the defendant] was suffering from any mental disorder." *Id.* at 1146. Considering Read's mental illness and behavior, the district court did not abuse its discretion by appointing counsel.

## IV. Whether Read's Trial Violated the Speedy Trial Act

Finally, Read claims the indictment must be dismissed because his trial did not comply with the Speedy Trial Act. We find this claim waived.

An indictment may be dismissed if trial does not commence within seventy days from the filing of the indictment, not counting days properly excluded under the Act. 18 U.S.C. §§ 3161–62. However, the "[f]ailure of the defendant to move for dismissal prior to trial . . . shall constitute a waiver of the right to dismissal under this section." *Id.* § 3162(a)(2).

Read waived his Speedy Trial Act claim. The sole instance in which the issue was arguably raised occurred at a status conference during which the government sought an additional psychiatric evaluation. Read's counsel said, "Mr. Read has indicated that he would like to proceed to trial and he would prefer no further delays." But, Read's counsel declined to object to the evaluation, noting that, because Read would be in custody until 2020 on his robbery sentence, there would be no prejudice in granting the motion.

This objection did not constitute a motion to dismiss the indictment. A defendant's "passing reference" to the Speedy Trial Act is inadequate to preserve the statutory claim. *See United States v. Brown*, 761 F.2d 1272, 1276–77 (9th Cir. 1985). Read's objection was even more cursory; it was directed more to the mental health evaluation than to delay, and did not mention his Speedy Trial rights at all. *Cf. Hall*, 181 F.3d at 1060 (defendant preserved his claim with an *in propria persona* motion to dismiss stating, "Notwithstanding the actions of appointed counsel, defendant has never waived or given up any of the rights to a Speedy Trial . . .").[4]

---

[4] To the extent Read suggests his counsel reiterated his objection in a February 27, 2017 filing, his claim is meritless. That filing expressed no objection at all to a subsequent delay, notwithstanding Read's claim that the filing was "carefully worded" to imply Read's objection.

## CONCLUSION

The district court committed structural error by permitting counsel to present an insanity defense over Read's clear objections.[5, 6]

**REVERSED and REMANDED.**

---

[5] At this time, we decline the government's invitation to limit a defendant's right to refuse an insanity defense in cases where the defendant is mentally ill. *But see Hendricks v. People*, 10 P.3d 1231, 1241–44 (Colo. 2000) (on statutory grounds, permitting counsel to present an insanity defense over defendant's clear objection where the defendant's reasons for rejecting the defense did not pass a test of "basic rationality.").

[6] All pending motions are denied as moot.